UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>QUINTEN McKOY,<br>    *Defendant*. | No. 3:23-cr-33 (JAM) |

### ORDER DENYING MOTION TO DISCLOSE CONFIDENTIAL INFORMANT AND DENYING MOTION TO SUPPRESS

The defendant Quinten McKoy has been charged with unlawful possession of a firearm. The evidence against him principally arises from the execution of a search warrant at his mother's apartment where he allegedly lived. The affidavit in support of the search warrant relied in large part on information furnished by a confidential informant.

McKoy now moves to disclose the identity of the confidential informant and also to suppress the evidence seized from the search of the apartment. I will deny the motion to disclose the identity of the confidential informant, because McKoy has not shown good reason to believe that disclosure is necessary for him to present a defense or to seek the suppression of evidence. On the other hand, McKoy has made enough of a showing to warrant an *in camera* interview of the confidential informant. I will deny the motion to suppress because McKoy has not made a substantial preliminary showing that there were any materially false statements or omissions in the search warrant affidavit that supported the search of the apartment.

### BACKGROUND

A federal grand jury has charged McKoy with unlawful possession of a firearm by a convicted felon. The charge stems from evidence recovered during the execution of a search warrant in October 2022 at an apartment in Bridgeport, Connecticut.

On October 6, 2022, a state court judge issued a search warrant for the apartment on the basis of an affidavit co-signed by two law enforcement officers.[1] The affidavit states that within the past 30 days the officers "received information from a confidential informant . . . whose information has been corroborated and found to be true, accurate and reliable" and who "reported to have personal knowledge that an individual known to him/her as Quinten Mckoy aka 'Quack', was physically observed in possession of a firearm located at his residence, identified as 421 Logan Street, 2nd Floor, Bridgeport, Connecticut."[2]

The affidavit goes on to attest that "[u]tilizing law enforcement databases and techniques, coupled with CI information and physical surveillance, the affiants established that Mckoy is currently residing in the second floor apartment of 421 Logan Street, Bridgeport, along with his mother fully identified as Avis Melendez."[3] The affidavit further states that Department of Motor Vehicle records for Avis Melendez reflect her mailing address to be 421 Logan Street, 2nd Floor, Bridgeport, Connecticut.[4]

According to the affidavit, McKoy has multiple prior convictions including firearm convictions for "No Pistol Permit" and "Illegal Transfer of Gun."[5] The affidavit further states that based on the affiants' training and experience, "those who own or posse[ss] firearms and or bullets generally maintain possession of them for long periods of time" and that "[f]irearms are usually considered to be of significant value and are generally maintained and secured on the person as well as in the residence, motor vehicle and/or place of business/employment, or where persons store personal property for long periods of time."[6] On essentially these grounds, the

---

[1] Doc. #58-1.
[2] *Id.* at 2 (¶ 3).
[3] *Id.* at 2 (¶ 5).
[4] *Id.* at 3 (¶ 7).
[5] *Id.* at 2–3 (¶ 6).
[6] *Id.* at 3 (¶ 8).

affidavit asserts that there is "probable cause to believe that an illegal firearm(s) will be located within 421 Logan Street, 2nd Floor Apartment, Bridgeport, Connecticut."[7]

## DISCUSSION

McKoy moves for disclosure of the identity of the confidential informant.[8] He also moves to suppress the evidence from the search of the apartment.[9] I will address each motion in turn.

### *Motion to disclose confidential informant*

Criminal investigations often rely on confidential informants who furnish information with an understanding that their identities will not be disclosed. Confidentiality not only protects an informant from potentially lethal retaliation but also protects the interests of law enforcement in encouraging persons to furnish information about criminal wrongdoing. For these reasons, the general rule is that the government need not disclose the identity of its confidential informants. *See Roviaro v. United States*, 353 U.S. 53, 59–61 (1957); *United States v. Swinton*, 797 F. App'x 589, 596 (2d Cir. 2019); *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997).[10]

But this rule is not absolute. A court may require the government to disclose an informant's identity if the defendant carries his burden to show that "absent such disclosure, he will be deprived of his right to a fair trial." *Fields*, 113 F.3d at 324. As the Second Circuit has explained, "[b]ecause the need for disclosure varies with the circumstances of each case, there is no fixed rule" in terms of when a court should compel disclosure of the identity of a confidential

---

[7] *Id*. at 3 (¶ 9).
[8] Doc. #49. McKoy's motion is in the form of a motion to reconsider my prior denial of his motion to disclose the confidential informant. I denied that motion as premature in the absence of an accompanying motion to suppress. Doc. #43.
[9] Doc. #52.
[10] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

informant, and whether to order disclosure "lies within the sound discretion of the district court." *Ibid.*

"Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Ibid.* In particular, a court should consider "'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Swinton*, 797 F. App'x at 596 (quoting *Roviaro*, 353 U.S. at 62).

The Second Circuit has made clear that "it is not sufficient to show that the informant was a participant in and witness to the crime charged." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988). Rather, the informant's identity and role must also be shown to be "material to the defense"—that is, "significant in determining guilt or innocence." *Ibid.*

Here, the government disclaims any intent to call the confidential informant at trial and asserts the safety interests of the confidential informant against having his or her identity disclosed.[11] For his part, McKoy makes no showing how disclosure of the identity of the confidential informant is necessary for his defense at trial. He does no more than speculate that the confidential informant may have planted the firearm and other evidence found at the search of the apartment.

McKoy seeks disclosure of the confidential information in order to bolster his motion to suppress evidence of the search of the apartment. But, as the Second Circuit has observed, "[t]he

---

[11] *See* Doc. #58 at 8 & n.4.

need for disclosure is far less compelling when, as here, it is sought in connection with a pretrial suppression hearing on issues which do not bear on defendant's guilt." *Fields*, 113 F.3d at 324. "[W]hile disclosure is not absolutely precluded when sought in regard to a suppression hearing, it will be deemed appropriate only where the information supplied by such persons constitutes the 'essence,' 'core' or 'main bulk' of the probable cause upon which the authorities have relied, and where the critical information ascribed to these individuals is not in any significant manner corroborated by independent evidence." *United States v. Manley*, 632 F.2d 978, 985 (2d Cir. 1980) (quoting *United States v. Comissiong*, 429 F.2d 834, 838–39 (2d Cir. 1970)).

Here, although law enforcement corroborated the confidential informant's information in part, it is fair to say that the essence, core, and main bulk of probable cause is the information furnished by the confidential informant about the presence of a firearm at the apartment at 421 Logan Street. On the other hand, the interests of the government weigh strongly in favor of an alternative protective measure other than outright disclosure of the confidential informant's identity to the defense. McKoy's concerns that the confidential informant did not furnish the information to law enforcement as recounted in the search warrant affidavit can be redressed by means of an *in camera* interview of the confidential informant. *See Fields*, 113 F.3d at 324 ("[E]ven if, as the defendants claim, the informant's information was uncorroborated and constituted the bulk of the probable cause upon which the police relied, we think the district court's *in camera* interview of the informant, conducted with a view to matters defense counsel identified in writing as potentially relevant, adequately protected defendants' rights.").

Accordingly, I will deny without prejudice McKoy's motion to disclose the identity of the confidential informant, but I shall require the government to make the confidential informant available for an *in camera* interview by the Court. If defense counsel has questions or lines of

inquiry to propose for the Court to consider with respect to this *in camera* interview, counsel may promptly submit this information to chambers. Following the interview of the confidential informant, I anticipate entering an order concerning whether any further disclosures or measures shall be required.

### *Motion to suppress*

McKoy moves to suppress the evidence recovered from the search of the apartment at 421 Logan Street. As an initial matter, McKoy does not challenge the facial sufficiency of the search warrant affidavit—that is, he does not argue that, even if the facts set forth in the warrant affidavit are true, these facts are not enough to establish probable cause to search the apartment. Instead, McKoy challenges—by means of his demand for a *Franks* hearing—the accuracy of certain statements in the search warrant affidavit.

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a criminal defendant may seek to suppress evidence from a search warrant if he shows (1) that the affidavit in support of the search warrant included statements or omissions that were knowingly and intentionally false or made or omitted with a reckless disregard for the truth, and (2) that such statements or omissions were necessary to the finding of probable cause. *Id.* at 155–56; *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017). To decide if the misrepresentations or omissions were necessary to the finding of probable cause, courts apply the "corrected affidavit" approach, which requires a court to consider whether a hypothetical corrected affidavit would still establish probable cause even after any misstatements are excluded and any omitted information is included. *See Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022).

Not every challenge to the accuracy of a search warrant affidavit requires a court to conduct an evidentiary hearing. A *Franks* hearing is required only if a defendant makes a

"substantial preliminary showing" that the affidavit includes false statements of fact or omissions that not only were necessary to sustain a showing of probable cause but also were the product of intentional deception or reckless disregard for the truth, as distinct from mere negligence or innocent mistake. *See United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023). This requirement that a defendant make a "substantial preliminary showing" is "a heavy one that requires more than a mere conclusory showing." *Id.* at 86.

Motions to suppress and for a *Franks* hearing are ordinarily made against the backdrop of the government's production to the defense of pre-trial discovery materials such as investigative reports by law enforcement officers. If a particular statement that is made in a search warrant affidavit finds no support in or is contradicted by the underlying investigative reports and materials, then it may be that there are fair grounds for the defendant to challenge the statement as false. On the other hand, if a statement in a search warrant affidavit tracks information appearing in underlying investigative reports and materials, then a defendant is hard-pressed to assail the accuracy of the statement absent some further reason to believe that law enforcement officers have fabricated the information that appears in their underlying investigative reports.

Here, McKoy primarily challenges the affidavit's statements that he possessed a firearm where he currently resided at 421 Logan Street. But there is an underlying FBI report reflecting that on October 4, 2022—just two days before the officers applied for a search warrant—there was information received from a confidential informant that McKoy "lives at his mother's residence located on the East End of Bridgeport (known by investigators to b[e] 421 Logan Street, 2nd Floor Bridgeport, CT)" and that "[i]n the first week of October 2022, MCKOY was in possession of a 9mm G2 handgun" and that "MCKOY keeps his guns at his mother's

house."[12] In light of this contemporaneous investigation report, McKoy has no grounds other than speculation to claim that the statements in the affidavit about his possession of a firearm where he resided at 421 Logan Street were intentionally false or the product of a reckless disregard for the truth.[13]

McKoy argues that there was no evidence that he resided on the second floor of 421 Logan Street. But, as discussed above, the underlying investigative report recounts the statement by the confidential informant that he was residing at his mother's house in the East End of Bridgeport, and McKoy does nothing to challenge the accuracy of Department of Motor Vehicle records showing that McKoy's mother indeed resided on the second floor of 421 Logan Street.[14] To the contrary, McKoy himself has submitted an affidavit from his mother admitting that she lives at that address and—albeit stopping short of saying that McKoy lived with her—her affidavit acknowledges that McKoy was an occasional overnight guest at her residence.[15]

Although McKoy complains that the confidential informant did not furnish a precise address for McKoy's mother, that makes no difference because law enforcement had additional information from the Department of Motor Vehicles to establish the particular address where McKoy's mother lived. It does not matter whether it was the confidential informant who furnished the specific address; there was probable cause all the same to believe that the relevant address was the second-floor apartment at 421 Logan Street.

McKoy argues that law enforcement had information to suggest that McKoy resided at a different address—170 Read Street in Bridgeport. But that information comes from older law

---

[12] Doc. #55 at 1–2. Another report from the next day, October 5, 2022, with the confidential human source states that "[i]n the first week of October 2022," McKoy "was in possession of a Glock 45 handgun." *Id.* at 5.
[13] Of course, as discussed above, I intend to conduct an *in camera* interview of the confidential informant. If this interview discloses reasons to doubt the integrity of the representations made in the search warrant affidavit, then this ruling will be subject to *sua sponte* reconsideration.
[14] *See* Doc. #58-4.
[15] Doc. #53 at 1 (¶¶ 3, 9).

enforcement and database records months before the information received from the confidential informant.[16] The information received from the confidential informant just two days before approval of the search warrant was more current and could be reasonably relied on by law enforcement regardless of information about McKoy's prior residences months or years before. Even if the affidavit had included all the additional information known to law enforcement about 170 Read Street, there would still be probable cause to believe on the basis of the confidential informant's most recent report that McKoy *currently* resided at his mother's address, just as the affidavit claimed.

The same reasoning negates McKoy's staleness complaint about law enforcement surveillance evidence of McKoy and his car in the area of 421/423 Logan Street in early 2022. It was not this information alone that supported the affidavit's claim that McKoy currently resided at 421 Logan Street. In any event, this prior surveillance information tended to corroborate the confidential informant's claim that McKoy was currently living at his mother's apartment at 421 Logan Street.

In short, McKoy has failed to make a substantial preliminary showing that there were any material false statements or omissions in the search warrant affidavit, much less that any such false statements or omissions were made by law enforcement with an intention to deceive or with reckless disregard for the truth. Accordingly, I will deny the motion for a *Franks* hearing and, in the absence of any other grounds to support McKoy's motion to suppress, I will likewise deny his motion to suppress. In the event that my *in camera* interview of the confidential informant

---

[16] Doc. #55-1 (Collect Person Query Results showing multiple residence addresses for McKoy from 2008 to 2021); Doc. #55-2 (Deadly Weapon Offender Registration Unit reporting form signed by McKoy reflecting address of 170 Read Street as of March 3, 2022); Doc. #55-3 (FBI surveillance report showing McKoy and his car in area of 421/423 Logan Street in February 2022).

brings to light additional facts that cast doubt on the integrity of the affidavit, then I shall reconsider this ruling.

## CONCLUSION

The Court DENIES defendant McKoy's renewed motion to disclose the confidential informant (Doc. #49) but subject to an *in camera* interview of the confidential informant. The Court DENIES the motion to suppress and for a *Franks* hearing (Doc. #52) for lack of a substantial preliminary showing of any materially false statements or omissions in the search warrant affidavit.

It is so ordered.

Dated at New Haven this 8th day of July 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge